(208 P.3d 343)
No. 99,354

STATE OF KANSAS, *Appellee*, v. ANTWON DEAN, *Appellant*.

Opinion filed June 5, 2009. [See Reporter's Note p. 47.]

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Thomas R. Stanton*, deputy district attorney, *Keith E. Schroeder*, district attorney, and *Steve Six*, attorney general, for appellee.

Before RULON, C.J., ELLIOTT and HILL, JJ.

HILL, J.: On its own motion, a trial court can continue a criminal trial beyond the normal 180-day limit because of other cases awaiting trial. The district court did so here because of a pending trial of a civil case. Because the statute allowing such continuances does not specifically limit them to only for pending *criminal* cases, we will not read that term into the statute. Had the legislature wanted to limit the trial court's authority in such a manner, it could have said so. It did not. Therefore, the defendant here received a speedy trial.

This is a direct appeal by Antwon Dean of his drug convictions. He raises several issues: a speedy trial violation; insufficient evidence; the trial court's failure to grant a new trial; jury instruction error; and an improper order to pay attorney fees. We will address the issues in that order.

*The case history reveals that Dean was living with his sister and her small children.*

After closely observing Antwon Dean's residence and suspecting drug sales, a Reno County Sheriff's deputy obtained a search warrant to search Dean's home. At the time of the search, Ashanti Dean, Dean's sister; Ashanti's three children; and Sarah Sheahan, a friend of Ashanti, were present.

After the deputy advised Ashanti of her *Miranda* rights, Ashanti told him that the drugs were located in the upstairs northwest bedroom. In the residence, there are three bedrooms, two upstairs and one downstairs. Relying on Ashanti's statements as well as papers found in each bedroom, the deputy determined the downstairs bedroom belonged to Kenneth White and the upstairs southwest bedroom belonged to Ashanti and her children. The upstairs northwest bedroom had photographs of Dean and contained only male clothing; therefore, the deputy believed it to be Dean's bedroom.

Leading Deputy Griffiths to the upstairs northwest bedroom, Ashanti pointed to the dresser. The search revealed the following:
- On top of the dresser there was an electronic scale, a set of Kroger sandwich bags, and Dean's wallet containing his driving license. Marijuana residue was found throughout the top of the dresser and detected in the electronic scale and Kroger sandwich bags.
- The upper left-hand drawer of the dresser was approximately 24 to 30 inches off the ground. Opening the upper left-hand dresser drawer, Deputy Griffiths discovered a 1-gallon Ziploc bag holding a compressed brick of marijuana; some of the marijuana had been partially peeled off. Furthermore, Kansas drug tax stamps were not affixed to the marijuana.

- Inside the upper right-hand drawer of the dresser, Deputy Griffiths found a Kansas photo identification card of Dean.

The deputy recovered marijuana and drug paraphernalia associated with marijuana only from the upstairs northwest bedroom. He did find a small quantity of marijuana and drug paraphernalia associated with marijuana in Sarah Sheahan's purse, both of which were consistent with personal use. Sarah Sheahan asserted she did not purchase her marijuana from Dean.

Using the evidence gleaned from the search, the State charged Dean with one count of possession of marijuana with intent to sell within 1,000 feet of a school; one count of possession of drug paraphernalia with the intent to use to package a controlled substance for sale; three counts of endangering a child; and one count of possession of marijuana without tax stamps affixed. Dean was convicted on all counts except the count of possession of marijuana with intent to sell within 1,000 feet of a school.

*We list the history of the trial settings.*

On January 3, 2007, Dean waived formal arraignment and entered a plea of not guilty. His jury trial was scheduled for March 20, 2007, before Judge Richard J. Rome. But on March 19, 2007, the State moved to continue the trial. Then on June 29, 2007, Dean's jury trial was rescheduled for July 2, 2007. Finally, on July 2, 2007, Judge Rome, on his own motion, continued the jury trial until July 10, 2007. The record shows: "Arguments heard on continuing Jury Trial. Court continues Jury Trial to July 10, 2007, if Judge Chambers can hear it. Otherwise, Jury Trial is scheduled 7-31-07." On July 3, 2007, Dean filed a motion to dismiss his case, claiming Judge Rome's continuance violated his statutory right to a speedy trial.

On July 6, 2007, Judge Timothy J. Chambers heard Dean's motion to dismiss. At the hearing, Dean claimed the evidence did not support Judge Rome's reasons for continuing his trial. Reviewing the record, Judge Chambers assessed the March continuance against the State but believed the 180th day fell on July 2 and not June 29. Moreover, Judge Chambers took judicial notice that Judge Rome had a civil case scheduled for July 2 and another case sched-

uled for July 3, which precluded Judge Rome from conducting Dean's jury trial.

From these findings, Judge Chambers denied Dean's motion. In his ruling, Judge Chambers interpreted the phrase "other cases" in K.S.A. 22-3402(5)(d) to include all cases, not just criminal cases. Under this interpretation, Judge Chambers found Judge Rome's continuance to be proper and held Dean's jury trial was properly scheduled within the 30-day time frame from July 2 under K.S.A. 22-3402(5)(d).

*We agree with the trial court—Dean's trial was held within the statutory time limit.*

Dean argues that his statutory right to a speedy trial had been violated because (1) "no evidence was provided to show that the court would be unable to handle [his] trial within 180 days," and (2) the evidence that was presented suggested a civil case could have been rescheduled so that Dean's jury trial could have been conducted within the 180-day time period.

A claimed violation of the statutory right to speedy trial presents an issue of law over which the Kansas appellate courts have unlimited review. *State v. Brown*, 283 Kan. 658, 661, 157 P.3d 624 (2007). Moreover, Dean's argument requires interpretation of K.S.A. 22-3402. Interpretation of a statute presents a question of law over which an appellate court has unlimited review. *State v. Storey*, 286 Kan. 7, 9-10, 179 P.3d 1137 (2008).

K.S.A. 22-3402(2) governs the statutory right to speedy trial and sets the 180 day limit:

"If any person charged with a crime and held to answer on an appearance bond shall not be brought to trial within 180 days after arraignment on the charge, such person shall be entitled to be discharged from further liability to be tried for the crime charged, unless the delay shall happen as a result of the application or fault of the defendant, or a continuance shall be ordered by the court under subsection (5)."

That subsection (5) (K.S.A. 22-3402[5][d]) reads:

"(5)   The time for trial may be extended beyond the limitations of subsections (1) and (2) for any of the following reasons:

.  .  .  ."

"(d)   Because of other cases pending for trial, the court does not have sufficient time to commence the trial of the case within the time fixed for trial by this section. Not more than one continuance of not more than 30 days may be ordered upon this ground."

This obviously means the trial court—because of busy dockets—can set over a trial for a period not greater than 30 days. That is what happened in this case.

Dean cites *State v. George*, 31 Kan. App. 2d 430, 434-35, 65 P.3d 1060 *rev. denied* 276 Kan. 971 (2003), for authority. We are not persuaded. Dean's reliance on this case is in error. In *George*, the court reviewed whether the trial court's order of a continuance under K.S.A. 22-3402(3)(c) was proper. 31 Kan. App. 2d at 434-35. K.S.A. 22-3402(3)(c) authorizes the time for trial to be extended if "[t]here is material evidence which is unavailable; that reasonable efforts have been made to procure such evidence; and that there are reasonable grounds to believe that such evidence can be obtained and trial commenced within the next succeeding ninety (90) days." In 2004, however, K.S.A. 22-3402 was amended. L. 2004, ch. 47, sec. 1. Thus, contrary to Dean's argument, K.S.A. 22-3402(5)(d)'s predecessor is found in K.S.A. 22-3402(3)(d) (Furse 1995), not subsection (3)(c). K.S.A. 22-3402(3)(d) (Furse 1995) states: "Because of other cases pending for trial, the court does not have sufficient time to commence the trial of the case within the time fixed for trial by this section. Not more than one continuance of not more than thirty (30) days may be ordered upon this ground."

Here, the record on appeal shows that Dean's jury trial required 2 days. Judge Rome already had a civil case scheduled on July 2. Then on July 3, Judge Rome was hearing a jury trial, but it is unclear from the record whether this case was criminal or civil in nature. Furthermore, on July 2 and 3, Judge Chambers had cases scheduled, which included criminal cases, before he was asked to hear Dean's jury trial. Finally, citing K.S.A. 22-3402(5)(d), Judge Rome, *sua sponte*, rescheduled Dean's jury trial to commence on July 10 before Judge Chambers. Then on July 10 and 11, within 30 days of Judge Rome's continuance, Judge Chambers conducted Dean's jury trial. Consequently, in contrast to Dean's first argu-

ment, the evidence supports the district court's actions under K.S.A. 22-3402(5)(d).

Next, without authority, Dean argues that the "evidence suggests that there was in fact a civil case which could have been rescheduled to provide Mr. Dean a trial within 180 days of his arraignment" and that the district court's failure to do so violated K.S.A. 22-3402(5)(d). Nevertheless, our review of case law for the current and previous version of K.S.A. 22-3402(5)(d) does not give credence to Dean's theory that the legislature intended for "other cases" in K.S.A. 22-3402(5)(d) to be limited to other *criminal* cases.

When such language has not been provided, this court will not read the statute to add this limitation. See *In re K.M.H.*, 285 Kan. 53, 79, 169 P.3d 1025 (2007) *cert. denied* 172 L. Ed. 2d 239 (2008) (When a statute is plain and unambiguous, an appellate court does not speculate as to the legislative intent behind it and will not read the statute to add something not readily found in it.). The district court here continued Dean's jury trial based on scheduling conflicts with civil and criminal cases. Therefore, the district court's continuance complied with the requirements in K.S.A. 22-3402(5)(d); thus, Dean's statutory right to a speedy trial was not violated.

*We hold there was sufficient evidence to support Dean's convictions.*

For this sort of claim, this court's standard of review is as follows:

"When the sufficiency of evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Gutierrez*, 285 Kan. 332, 336, 172 P.3d 18 (2007).

A review of the law of possession is helpful here.

"Possession may be immediate and exclusive, jointly held with another or constructive, as when marijuana is kept by the accused in a place where he has some measure of access and right of control." (Emphasis added.) *State v. Rose*, 8 Kan. App. 2d 659, Syl. ¶ 5, 665 P.2d 1111, *rev. denied* 234 Kan. 1077 (1983).

In cases where the defendant does not exclusively possess the premises upon which drugs are found, it cannot be inferred that the defendant knowingly possessed the drugs unless there are other

incriminating circumstances linking the defendant to the drugs. These incriminating circumstances include (1) a defendant's previous participation in the sale of a controlled substance; (2) his or her use of controlled substances; (3) his or her proximity to the area where the drugs are found; (4) the fact that the drugs are found in plain view; (5) incriminating statements of the defendant; (6) suspicious behavior by the defendant; and (7) proximity of defendant's possessions to the drugs. *State v. Marion*, 29 Kan. App. 2d 287, 290, 27 P.3d 924, *rev. denied* 272 Kan. 1422 (2001); see PIK Crim. 3d 67.13-D. Possession can be proven by circumstantial evidence. *Rose*, 8 Kan. App. 2d at 664.

In this case, the evidence indicates that the upstairs northwest bedroom belonged solely to Dean. In that bedroom, there were pictures of Dean and only male clothing. Furthermore, Ashanti stated that she and her children occupied the upstairs southwest bedroom and Kenneth White occupied the downstairs bedroom. Finally, the evidence discovered in the upstairs northwest bedroom showed that only one person occupied that bedroom. Moreover, the evidence demonstrated that the dresser located in the upstairs northwest bedroom was exclusively controlled by Dean: Dean's wallet was on top of the dresser with his driving license, and Dean's Kansas photo identification was inside the dresser. Based on this circumstantial evidence, it is clear that Dean had exclusive possession of the dresser located in the upstairs northwest bedroom. Accordingly, there was sufficient evidence to support the jury's verdict that Dean possessed the marijuana found in that upstairs northwest bedroom's dresser by means of constructive possession.

Furthermore, the evidence shows that there were no tax stamps affixed to the marijuana found in the dresser located in Dean's bedroom. Consequently, the evidence was sufficient to support his conviction of possession of marijuana without a tax stamp.

Moving on to the next offense, Dean was convicted of possession of drug paraphernalia with the intent to use to package a controlled substance for sale under K.S.A. 65-4152(a)(3). K.S.A. 2006 Supp. 65-4152(a)(3) states: "No person shall use or possess with intent to use: (3) any drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, pre-

pare, test, analyze, pack, repack, sell or distribute a controlled substance in violation of the uniform controlled substances act."

"Drug paraphernalia" includes but is not limited to: "(5) Scales and balances used or intended for use in weighing or measuring controlled substances" and "(9) Capsules, balloons, envelopes and other containers used or intended for use in packaging small quantities of controlled substances." K.S.A. 2006 Supp. 65-4150(c).

The evidence shows that marijuana residue was found in both the scales and baggies. In addition, the deputy testified that the scales were not consistent with paraphernalia used for personal use. Therefore, reviewing this evidence in the light most favorable to the prosecution, it is clear that a rational factfinder could have found Dean guilty of possessing drug paraphernalia with the intent to use to package marijuana for sale.

Dean alternatively claims that the jury's decision not to find that he possessed the marijuana with intent to sell within 1,000 feet of a school was inconsistent with the jury's finding that he possessed drug paraphernalia with the intent to use to package a controlled substance for sale.

Considering this alternative argument, we first note our courts have held that an inconsistent verdict is not erroneous so long as there is sufficient evidence to support it. See *State v. Herron*, 286 Kan. 959, 966, 189 P.3d 1173 (2008); see also *State v. Beach*, 275 Kan. 603, Syl. ¶ 4, 67 P.3d 121 (2003) (concluding that proper scope of appellate review of a jury verdict in a criminal case which appears inconsistent is limited to addressing whether the crime of conviction is supported by sufficient evidence, regardless of the jury's verdict with respect to any predicate offenses). As we pointed out above, sufficient evidence exists to support Dean's conviction. Accordingly, Dean's claim of reversible error from inconsistent verdicts fails.

Finally, Dean argues that the evidence was insufficient to show that under K.S.A. 21-3608(a) he endangered Ashanti's children. K.S.A. 21-3608(a) states: "Endangering a child is intentionally and unreasonably causing or permitting a child under the age of 18 years to be placed in a situation in which the child's life, body or health may be injured or endangered." In order to be found guilty

of child endangerment, our Supreme Court has held that one must either (1) cause a child to be placed in a situation where the child's life, body, or health may be injured or endangered or (2) have authority or control over either the child or the abuser and permit the child to be placed in such a situation where the child's life, body, or health may be injured or endangered. *State v. Wilson*, 267 Kan. 550, 567-68, 987 P.2d 1060 (1999); *State v. DuMars*, 33 Kan. App. 2d 735, 756, 108 P.3d 448, *rev. denied* 280 Kan. 986 (2005).

Here, the evidence shows that Dean's bedroom door was open and unlocked; there were 432 grams of marijuana in the dresser located in Dean's bedroom; the dresser drawer containing the marijuana was also unlocked; and the dresser drawer was located about 2 feet from the ground. The evidence also indicates that the children had free run throughout the house. One deputy observed that "the 2-year-old was able to reach up on a rather tall bed, grab a couple of ball caps off of it. .. . . We had them reaching up, opening cabinets, getting up on the computer stand, climbing up on chairs during the search warrant."

In *State v. Fisher*, 230 Kan. 192, 195, 631 P.2d 239 (1981), our Supreme Court interpreted a subsection of the predecessor statute with nearly identical language to the current 21-3608(a) and stated: "[T]he word 'may' as used in K.S.A. 21-3608(1)(b) means something more than a faint or remote possibility; it means that there is a reasonable probability, a likelihood that harm to the child will result." Based on the evidence presented, there was more than a faint or remote probability that the children could have accessed the marijuana. Dean possessed a large amount of marijuana, stored it in a place that was accessible to the children, and did nothing to prevent their access by locking his dresser or bedroom. Accordingly, by causing the children to be placed in a situation where they may be injured or endangered, there was sufficient evidence for a rational factfinder to find Dean guilty of the crime of endangering a child.

*We see no error in denying Dean's motion for a new trial.*

On appeal, Dean argues that the district court erred in denying his motion for new trial on the basis that his counsel was ineffective

for failing to ask for the jury instruction under K.S.A. 65-4152(a)(2) as a lesser included offense of K.S.A. 65-4152(a)(3). Accordingly, to determine whether Dean's counsel was ineffective by failing to request such an instruction, this court must decide whether K.S.A. 65-4152(a)(2) is a lesser included offense of K.S.A. 65-4152(a)(3), and if so, whether there was a real possibility the jury would have returned a different verdict. " ' " 'An instruction on a lesser included offense is not required if the jury could not reasonably convict the defendant of the lesser included offense based on the evidence presented.' " ' [Citations omitted.]" *State v. Reid*, 286 Kan. 494, 522, 186 P.3d 713 (2008).

In denying Dean's motion for new trial, the court reasoned that K.S.A. 2006 Supp. 65-4152(a)(2) was not a lesser included offense of K.S.A. 2006 Supp. 65-4152(a)(3) because misdemeanor possession of drug paraphernalia contains the element use to "ingest," which is not found in felony possession of drug paraphernalia.

K.S.A. 2006 Supp. 65-4152 states, in relevant part:

"(a) No person shall use or possess with intent to use:

. . . .

(2)   any drug paraphernalia to use, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of the uniform controlled substances act;

(3)   any drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, sell or distribute a controlled substance in violation of the uniform controlled substances act."

A reading of the statute reveals that the legislature intended to criminalize different behaviors as they related to drug paraphernalia. "While both of the statutes require the use or possession with intent to use drug paraphernalia, the verbs describing the final element are very distinct and different." *State v. Cochran*, No. 89,631, unpublished opinion filed January 9, 2004, *rev. denied* 277 Kan. 925 (2004), slip op at 5. K.S.A. 2006 Supp. 65-4152(a)(2) requires proof of the use of drug paraphernalia "to use, store, contain, conceal, inject, ingest, inhale or otherwise introduce into the human body a controlled substance in violation of the uniform controlled substances act." K.S.A. 2006 Supp. 65-4152(a)(3) re-

quires the use of drug paraphernalia "to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, sell or distribute a controlled substance in violation of the uniform controlled substances act." The nature of the use of the drug paraphernalia distinguishes these crimes.

Therefore, we find that K.S.A. 2006 Supp. 65-4152(a)(2) is not a lesser degree of K.S.A. 2006 Supp. 65-4152(a)(3). See *State v. Cochran*, No. 89,631; see also *State v. Zamarron-Gonzalez*, No. 98,234, unpublished decision filed June 13, 2008, *rev. denied* 287 Kan. 769 (2009) (holding that K.S.A. 65-4152[a][2] and K.S.A. 65-4152[a][3] do not share identical elements), slip op at 3.

The plain meaning of the words in the statute also refutes any claim that the terms in each subsection are synonymous. This court has previously dismissed the claim that "pack, repack" found in K.S.A. 2006 Supp. 65-4152(a)(3) and "store, contain" found in K.S.A. 2006 Supp. 65-4152(a)(2) describe the same criminal conduct. In *Cochran*, this court opined that "[o]ne can clearly 'contain' or 'store' items by knowing of their presence; however, that same person may not have been the one to 'pack' the item into its location." *State v. Cochran*, No. 89,631, slip op at 6. In *Zamarron-Gonzalez*, this court held that "[t]he terms 'pack' and 'repack' as used in K.S.A. 65-4152(a)(3) and the term 'store' as used in K.S.A. 65-4152(a)(2) do not have the same meaning when considered in their proper context, and these statutory provisions do not overlap." *State v. Zamarron-Gonzalez*, slip op at 3.

Therefore, we find the district court did not abuse its discretion in denying Dean's motion for new trial. K.S.A. 2006 Supp. 65-4152(a)(2) is not a lesser included offense of K.S.A. 2006 Supp. 65-4152(a)(3).

With this finding, it is unnecessary to further determine whether there was a real possibility the jury would have returned a different verdict had an instruction under K.S.A. 2006 Supp. 65-4152(a)(2) been provided. We will not address that issue.

*Next, we examine Dean's complaint about alternative means and child endangerment and find harmless error.*

Challenging his three convictions of endangering a child, Dean argues that his right to jury unanimity was violated because substantial evidence did not support the alternative means of "causing" or "permitting" the child in question to be placed in a situation where the child's life, body, or health may be injured or endangered.

Here, jury instructions Nos. 11, 12, and 13 presented the three counts of child endangerment and offered the jury both means: "That the defendant intentionally and unreasonably *caused* or *permitted* [the child] to be placed in a situation in which there was a reasonable probability that [the child's] life, body or health would be injured or endangered."

The rule concerning alternative means cases is well settled. An alternative means case is one in which a single offense may be committed in more than one way. In such a case, there must be jury unanimity as to the guilt for the crime charged but not to the means by which the crime was committed as long as substantial evidence supports each alternative means. If the State presented evidence of alternative means for commission of the crime, this court must determine whether a rational factfinder could have found each means of committing the crime proven beyond a reasonable doubt. See *State v. Timley*, 255 Kan. 286, 289-90, 875 P.2d 242 (1994).

Substantial evidence is evidence possessing both relevance and substance and which provides a substantial basis of fact from which the issues can reasonably be determined. Specifically, substantial evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *State v. Walker*, 283 Kan. 587, 594-95, 153 P.3d 1257 (2007).

Here, the facts show that Dean was the children's uncle but that the children lived with their mother in her bedroom in the house. Additionally, no evidence was presented to indicate that he had authority or controlled the children outside their mother's care: there were no children's clothes or items found in Dean's bedroom.

The evidence showed only that Dean stored a large amount of marijuana in a place accessible to the children, which created a reasonable probability that the children could be harmed if they accessed the drug. Therefore, substantial evidence does not support a finding that Dean committed the second means of child endangerment.

But, when strong evidence supports at least one of the means of committing a crime in an alternative means case, and there is no evidence of the other means, the district court's error in instructing the jury on all alternative means can be harmless rather than reversible.

"When the evidence is insufficient to support an alternative legal theory of liability, it would generally be preferable for the court to give an instruction removing that theory from the jury's consideration. The refusal to do so, however, does not provide an independent basis for reversing an otherwise valid conviction. Appellate courts have attained a degree of confidence in jury verdicts of guilt in cases where there is overwhelming evidence supporting the conviction under one of the alternative means presented to the jury. In such cases, it is harmless error for the trial court to instruct on all alternatives." *State v. Smith*, 36 Kan. App. 2d 606, Syl. ¶ 5, 142 P.3d 739 (2006).

See also *State v. Dixon*, 279 Kan. 563, 601, 606, 112 P.3d 883 (2005) (harmless error for district court to instruct jury that defendant burglarized victim with intent "to commit a theft, and/or aggravated arson, a felony, and/or criminal damage to property, a felony," when strong evidence supported at least one means and there was no evidence of other means).

Here, as stated above, no evidence was presented at trial to support the theory that Dean had authority or control over the children. But, there was ample evidence to support the theory that Dean caused the children to be placed in a situation where they could be injured or endangered. Therefore, under these facts, it was harmless error for the district court to instruct the jury on both alternative means of "caus[ing] or permit[ting]" for the crime of endangering a child.

*The two crimes are not identical and therefore the sentence imposed on Dean is proper.*

The identical offense doctrine provides that when two crimes have identical elements but are classified differently for purposes of imposing a penalty, a defendant convicted of either crime must be sentenced to the lesser penalty provision. In determining whether the elements are identical for sentencing purposes, this court must consider the statutory elements in conjunction with the underlying facts. See *State v. Cooper*, 285 Kan. 964, Syl. ¶ 2, 179 P.3d 439 (2008); *State v. McAdam*, 277 Kan. 136, 146, 83 P.3d 161 (2004); *State v. Moore*, 39 Kan. App. 2d 568, Syl. ¶ 20, 181 P.3d 1258 (2008).

Dean argues that he should have received a misdemeanor sentence instead of his felony sentence because, in his view, K.S.A. 65-4152(a)(3) and K.S.A. 65-4152(a)(2) prohibit identical conduct. We disagree. As we have previously pointed out, K.S.A. 2006 Supp. 65-4152(a)(2) and K.S.A. 2006 Supp. 65-4152(a)(3) do not share identical elements.

Moreover, by looking at the facts to this case, it is clear that Dean was using or possessing with intent to use his scales and baggies to "package, pack, or repack" rather than for storage or containment. The evidence showed that Dean was already storing the marijuana in the 1-gallon Ziploc bag. For these reasons, the identical offense doctrine does not apply. Accordingly, Dean should not have been sentenced to the lesser penalty. See also *State v. Sullivan*, No. 96,638, unpublished decision filed March 7, 2008 (holding that K.S.A. 2005 Supp. 65-4152[a][2] and K.S.A. 2005 Supp. 65-4152[a][3] are not identical offenses, and thus, the defendant should not have been sentenced with the lesser penalty).

*We do find an improper attorney fee assessment.*

Here, the sentencing transcript reveals that the district court waived Dean's Board of Indigents' Defense Services (BIDS) fees. But, as noted by Dean and asserted incorrectly by the State, the district court later ordered Dean to pay BIDS attorney fees through its journal entry of judgment. In determining the amount of BIDS fees owed, our courts have further held that " 'the sen-

tencing court, at the time of initial assessment, must consider the financial resources of the defendant and the nature of the burden that payment will impose explicitly, stating on the record how those factors have been weighed in the court's decision.' " See, *e.g.*, *State v. Drayton*, 285 Kan. 689, 716, 175 P.3d 861 (2008).

At sentencing, the district court affirmatively waived Dean's BIDS fees, which under K.S.A. 22-4513(a) includes BIDS attorney fees. The manner in which the district court waived Dean's BIDS fees complied with K.S.A. 22-4513(b). Subsequent to this ruling, the district court did not reassess Dean's financial ability to pay BIDS attorney fees before entering its rulings in its journal entry of judgment. Consequently, in failing to comply with K.S.A. 22-4513(b) before making the later imposition of BIDS attorney fees, the district court's order for these fees in its journal entry of judgment was improper.

Affirmed. BIDS attorney fees judgment vacated and remanded with instructions to comply with K.S.A. 22-4513(b).