NOT DESIGNATED FOR PUBLICATION

No. 120,944

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MYLES RICHMOND,
*Appellant*.


MEMORANDUM OPINION

Appeal from Geary District Court; STEVEN L. HORNBAKER, judge. Opinion filed March 27, 2020. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Tony Cruz*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.


Before GARDNER, P.J., BUSER, J., and BURGESS, S.J.

PER CURIAM:  Myles Richmond was found guilty of possession of marijuana with the intent to distribute, a drug tax stamp violation, possession of drug paraphernalia, and possession of marijuana. He was sentenced to a controlling term of 30 months' imprisonment. Richmond appeals, alleging there was insufficient evidence to sustain his convictions, and the district court erred by not instructing the jury on Count 1 on a lesser included offense of possession of marijuana. Finding no error, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Shortly before midnight on August 27, 2017, Geary County Deputy Nate Clement observed a Dodge Charger traveling east on I-70. Deputy Clement's radar clocked the vehicle driving 90 miles per hour in a 75 miles per hour zone. Deputy Clement initiated a traffic stop. When he initiated the traffic stop, Deputy Clement could see movement in the car but could not see what the vehicle's occupants were doing because of the vehicle's dark window tint. Deputy Clement identified the driver as Richmond and the passenger as Kiara Jackson.

Deputy Clement advised Richmond the reason for the traffic stop and asked Richmond where they were coming from. Richmond told the deputy they were returning to Grandview, Missouri, but could not tell the officer where they came from. While talking to Richmond, Deputy Clement smelled the odor of raw marijuana. The deputy asked Richmond if there was any reason why he could smell marijuana, to which Richmond responded, "[M]aybe." Deputy Clement asked Richmond and Jackson to step out of the vehicle. Because he was by himself, the officer patted both Richmond and Jackson down for weapons and placed both in handcuffs for officer safety. After being handcuffed, Richmond asked Deputy Clement if the officer could cut him a break. At trial, Deputy Clement testified that he thought it was an odd request because he had not yet started to search the vehicle.

Before starting his search, Deputy Clement observed "marijuana shake" on the floorboard and center console while standing at the driver's side window. When searching the vehicle, the officer found a black container, labeled THC, on the driver's floorboard containing shatter or wax. Beneath the radio, in the center of the dashboard, Deputy Clement found a digital scale with marijuana on it. In the backseat were resealable plastic bags, as well as a wallet inside a purse containing a leafy green substance Deputy Clement believed was marijuana. On the backseat floorboard, the officer found a blue

bag containing five plastic containers with marijuana, a plastic bag, and a plastic box containing baggies. A black ashtray in the center console contained nine burnt marijuana cigarettes. Deputy Clement also found plastic baggies and rubber bands in the backseat center armrest. Another deputy arrived to assist with the vehicle search and found suspected marijuana in the passenger front door panel. The deputies also found some THC edibles.

Richmond was charged with possession of marijuana with intent to distribute, a drug tax stamp violation, possession of drug paraphernalia, and possession of marijuana.

Deputy Clement testified regarding these events at trial. Deputy Clement also testified that based on his training and experience, the amount of marijuana, the baggies, rubber bands, and the scale was indicative of possession with the intent to distribute. The officer testified that Richmond had multiple cell phones, which was a common practice for drug dealers. Richmond was initially arrested for the black THC container before Deputy Clement discovered the blue bag. Jackson was arrested when Deputy Clement found marijuana in her purse. According to the officer, Jackson admitted the marijuana in the purse was hers, but no one claimed possession of the marijuana in the blue bag. On cross-examination, Deputy Clement acknowledged that a third-party who was not present at the stop owned the car.

Patrick Porubsky, a forensic chemist of the Kansas Bureau of Investigation (KBI), also testified. Porubsky testified that the black container tested positive for THC. The burnt cigarettes in the ashtray also tested positive for THC. The suspected marijuana in the blue bag was confirmed to be marijuana and weighed 115.66 grams. There was no tax stamp affixed to it.

Richmond testified in his own defense. Richmond testified that the Charger was not his. When Deputy Clement stopped him, Richmond had been driving for 16 hours

3

that day. He and Jackson left Grandview, Missouri, that morning, drove to somewhere in Colorado, and were driving back to Grandview when the officer stopped them. Richmond admitted he asked Deputy Clement to give him a break but claimed he was talking about a speeding ticket. Richmond testified that he told Deputy Clement that the vehicle smelled like marijuana because Jackson smoked. Richmond denied ever seeing the marijuana in the blue bag. He admitted seeing the burnt marijuana cigarettes found in the ashtray but denied they were his. Richmond also admitted seeing the THC container but denied it belonged to him. Richmond testified that Jackson had admitted to Deputy Clement that all the marijuana in the vehicle belonged to her.

The jury found Richmond guilty of marijuana with intent to distribute, a drug tax stamp violation, possession of drug paraphernalia, and possession of marijuana.

The district court sentenced Richmond to 30 months' imprisonment with 36 months' postrelease supervision for possession of marijuana with intent to distribute. The district court also sentenced him to 6 months' imprisonment for the drug tax stamp violation, 17 months' imprisonment for possession of paraphernalia, and 11 months for possession of marijuana. The district court ordered the sentences to run concurrently.

Richmond timely appeals.

WAS THERE SUFFICIENT EVIDENCE TO SUSTAIN RICHMOND'S CONVICTIONS?

Richmond argues the State failed to prove he knowingly possessed marijuana because he denied knowing there was marijuana and drug paraphernalia in the vehicle. Even if the State could prove he possessed the marijuana, Richmond asserts the State did not prove intent to distribute because the quantity was insufficient to establish a rebuttable presumption of possession with the intent to distribute. Because there was insufficient evidence to prove Richmond possessed marijuana, he also argues there was

4

also insufficient evidence to support his possession of drug paraphernalia, a drug tax stamp violation, and possession of marijuana convictions. The State responds that there was sufficient evidence because of Richmond's proximity to the marijuana, the digital scale, and plastic baggies. Further, the State asserts Deputy Clement's testimony regarding the weight of the marijuana, the plastic baggies, multiple cell phones, and quick trip to Colorado provided sufficient evidence of intent to distribute.

*Standard of Review*

When a defendant alleges the evidence is insufficient to sustain a conviction, the issue is "whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations." *State v. Lloyd*, 299 Kan. 620, 632, 325 P.3d 1122 (2014). A guilty verdict is upheld, except "in rare cases when the court determines that evidence was so incredulous no reasonable fact-finder could find guilt beyond a reasonable doubt." *State v. Torres*, 308 Kan. 476, 488, 421 P.3d 733 (2018). A guilty verdict can be based on only circumstantial evidence and any inferences reasonably deduced therefrom. See *State v. Rosa*, 304 Kan. 429, 433, 371 P.3d 915 (2016).

*Analysis*

For sufficient evidence to exist, evidence must support each element of an offense. *State v. Chandler*, 307 Kan. 657, 669, 414 P.3d 713 (2018). Here, Richmond was charged with possession of marijuana with intent to distribute, possessing a controlled substance without a drug tax stamp, possession of drug paraphernalia, and possession of marijuana. These offenses require proof of possession of marijuana. Richmond's brief primarily focuses on his conviction for possession of marijuana with intent to distribute and argues

the lack of sufficient evidence for that conviction means there was not sufficient evidence for his other convictions. K.S.A. 2017 Supp. 21-5705(a) makes it unlawful for a person to possess marijuana with the intent to distribute. A rebuttable presumption of an intent to distribute exists if the defendant possesses 450 or more grams of marijuana. K.S.A. 2017 Supp. 21-5705(e)(1). As Richmond points out, the 115.66 grams for which he was arrested falls below the presumption level. Therefore, Richmond argues there must be other evidence sufficient to support the element of possession and the element of intent to distribute.

Possession "requires specific intent to exercise control over the substances, with knowledge of the nature of the substance." *State v. Washington*, 244 Kan. 652, 654, 772 P.2d 768 (1989). "[T]he crime of possession with intent to distribute a controlled substance requires proof that the defendant possessed—meaning knowingly exercised control—over any controlled substance with the intent to distribute it." *State v. Rizal*, 310 Kan. 199, 207, 445 P.3d 734 (2019). To act knowingly in this context, "a person must know the essence of the substance possessed; the fundamental quality that distinguishes that substance from another one." 310 Kan. at 207. To convict a defendant of possession with intent to distribute, "the State must prove that the defendant had knowledge of the nature of the controlled substance—meaning, that the defendant either knew the identity of the substance or knew that the substance was controlled." 310 Kan. at 208. Possession may be constructive, "as where the drug is kept by the accused in a place to which he has some measure of access and right of control." *Washington*, 244 Kan. at 654.

The State may prove knowledge and intent with circumstantial evidence. *Rosa*, 304 Kan. at 434. When a defendant is in nonexclusive possession of the area where illegal drugs are found, "the mere presence of or access to the drugs, standing alone, is insufficient to demonstrate possession absent other incriminating circumstances." 304 Kan. at 434. When a claim is made that a defendant had nonexclusive possession, courts look to several factors to determine if the defendant had possession, including:  the

6

defendant's previous participation in the sale or use of drugs; the defendant's proximity to the area where the drugs are found; the drugs being found in plain view; a defendant's incriminating statements or suspicious behavior; and the proximity of a defendant's possessions to the drugs. See 304 Kan. at 434; *State v. Dean*, 42 Kan. App. 2d 32, 39, 208 P.3d 343 (2009); *State v. Gibson*, 30 Kan. App. 2d 937, 953, 52 P.3d 339 (2002). None of these factors, by themselves, may be sufficient to support a conviction, but, taken together, they provide a sufficient inference of knowing possession. *Rosa*, 304 Kan. at 434.

The jury instructions in this case provided the jury with a list of five factors to consider to determine whether Richmond was in possession of the marijuana:

"1. defendant's proximity to the area where the controlled substance was found;

"2. the fact the controlled substance was found in plain view;

"3. incriminating statements of the defendant;

"4. suspicious behavior of the defendant; and

"5. proximity of the defendant's possession to the controlled substance."

Both Richmond and the State rely on these factors in making their arguments.

Richmond was in close proximity to the marijuana when Deputy Clement stopped him. Richmond was sitting in the driver's seat. Deputy Clement observed "marijuana shake" on the floorboard console around Richmond and found a cannister containing THC on the driver's floorboard where Richmond was sitting. A digital scale with marijuana residue was found beside him under the center dashboard console. The blue bag containing 115.66 grams of marijuana and plastic baggies was found on the rear passenger's side floorboard within arm's reach of Richmond.

The only evidence of marijuana in plain view was the "marijuana shake." The 115.66 grams of marijuana was shielded from plain view in the blue bag. Deputy Clement observed the digital scale and baggies when he searched the vehicle.

The State argues Richmond made an incriminating statement by asking the officer to "cut him a break." Richmond argues this statement was regarding a speeding ticket, not the marijuana. Richmond twice asked Deputy Clement to cut him a break. Both times occurred after the officer informed Richmond that he smelled marijuana in the vehicle and that Deputy Clement was going to search the vehicle for drugs. When viewing the evidence in the light most favorable to the State, a reasonable person could believe Richmond's statements concerned the marijuana in the vehicle.

Deputy Clement testified that Richmond's description of his travel was suspicious. Richmond drove eight hours to Colorado before turning around and driving eight hours returning the way he came again that same day. Richmond did not know where he traveled to in Colorado. Richmond also had multiple cell phones. Deputy Clement testified that, in his experience, these actions were indicative of drug trafficking.

In the backseat of the vehicle near the blue bag containing marijuana was a pair of Richmond's pants with a cell phone in the pocket and Jackson's purse. There was nothing else in the vehicle besides the marijuana and drug paraphernalia.

Taken together, the factors support a finding that Richmond was in constructive possession of the marijuana. Richmond was within close proximity of the marijuana. He asked Deputy Clement twice for a break after the deputy commented on the smell of burnt marijuana and his intent to search the vehicle. The only factor that weighs in Richmond's favor was the bulk of the marijuana was not in plain view. This is not enough to overcome the high bar set by the standard of review. A reasonable person viewing the

totality of the evidence in the light most favorable to the State could find Richmond possessed the marijuana.

As for the intent to distribute element, the evidence when viewed in a light most favorable to the State supports the jury's finding. Richmond argues the 115.66 grams of marijuana is below the statutory threshold for a presumption of possession with intent to distribute and the State did not prove Richmond intended to distribute the marijuana. A conviction for possession with intent to distribute may be upheld even if the quantity of drugs is small. *Gibson*, 30 Kan. App. 2d at 953. Deputy Clement testified regarding several factors that in his experience supported an intent to distribute. The weight of the marijuana was 115.66 grams. Richmond had multiple cell phones. Deputy Clement found plastic baggies, rubber bands, and other boxes of baggies in the car. Deputy Clement testified that taking a short turnaround trip to Colorado in a third-party vehicle was consistent with drug trafficking. Richmond did not contradict this evidence at trial. Instead, Richmond relies on his denial of knowledge of the baggies in the vehicle and his denial about an intent to use the baggies or scale in connection with the marijuana. When viewed in a light most favorable to the State, there is sufficient evidence for a reasonable fact-finder to find Richmond guilty of possession with intent to distribute.

Richmond's insufficiency of the evidence arguments for his other convictions rely on his argument that there was insufficient evidence to sustain his conviction for possession with intent to distribute. Because there was sufficient evidence to support his first conviction, sufficient evidence supports his other convictions as well. Richmond does not dispute the marijuana lacked a tax stamp. Because he did possess more than 28 grams of marijuana, Richmond is guilty of a tax stamp violation. See K.S.A. 79-5204(a); K.S.A. 2017 Supp. 79-5201(c). Regarding his drug paraphernalia conviction, the evidence supports the fact that Richmond possessed the marijuana. A reasonable person could find that the baggies in the vehicle and the digital scale could be used to distribute that marijuana. As such, there was sufficient evidence Richmond possessed drug

9

paraphernalia. See K.S.A. 2017 Supp. 21-5709(b)(1). He could also be found guilty of possession regarding the other marijuana found in the vehicle for the same reasons as his possession with the intent to distribute conviction. See K.S.A. 2017 Supp. 21-5706(b)(7).

A sufficiency of the evidence challenge requires a court to view the evidence in a light most favorable to the State. *Lloyd*, 299 Kan. at 632. When viewing the evidence in this light, a reasonable fact-finder could find the evidence supported Richmond's convictions.

### DID THE DISTRICT COURT ERR BY FAILING TO INSTRUCT THE JURY ON A LESSER INCLUDED OFFENSE OF POSSESSION OF MARIJUANA?

For his second point, Richmond argues the district court erred when it did not instruct the jury on the lesser included offense of possession of marijuana on the count of possession with intent to distribute charge. Richmond argues the evidence supports a lesser included offense instruction because the jury could have concluded from the evidence that he possessed the 115.66 grams of marijuana but did not intend to distribute it. Richmond asserts there is a "real possibility" that the jury would have returned a different verdict if it had been instructed on the lesser included offense of possession of marijuana. The State admits a lesser included offense instruction would have been legally appropriate but argues it was not factually appropriate because the defendant denied possessing the marijuana or that the marijuana was for personal use.

*Standard of Review*

> "'For jury instruction issues, the progression of analysis and corresponding standards of review on appeal are: (1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to

10

the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward,* 292 Kan. 541, 256 P.3d 801 (2011).'" *State v. Woods*, 301 Kan. 852, 876, 348 P.3d 583 (2015) (quoting *State v. Plummer*, 295 Kan. 156, Syl. ¶ 1, 283 P.3d 202 [2012]).

*Analysis*

A trial court has an affirmative duty to instruct the jury on lesser included offenses if there is evidence supporting the lesser offense. That affirmative duty exists even if the defendant does not request the instruction. *State v. Bowman*, 252 Kan. 883, 892, 850 P.2d 236 (1993).

When a defendant challenges the lack of a lesser included offense instruction, the appellate court considers the reviewability of the issue de novo. *Woods*, 301 Kan. at 876. To fully preserve a claim that the district court erred, the defendant must object on the record to the omission before the jury begins its deliberations. *State v. Wade*, 295 Kan. 916, 924, 287 P.3d 237 (2012). Richmond acknowledges that he did not request a lesser included offense instruction at trial. The lack of an objection does not foreclose Richmond's challenge. See K.S.A. 22-3414(3). If a party fails to object at trial, the appellate court will only reverse if the failure to give the instruction was clearly erroneous. K.S.A. 22-3414(3). Whether a district court committed clear error only comes into play if the appellate court determines the instruction was legally and factually appropriate. *State v. Williams*, 295 Kan. 506, 515-16, 286 P.3d 195 (2012).

The elements of possession are identical to some of the elements of possession with intent to distribute making possession a lesser included offense of possession with intent to distribute. *State v. Gilmore*, No. 97,362, 2008 WL 5234530, at *2 (Kan. App. 2008) (unpublished opinion). The State acknowledges possession is a lesser included offense of possession with intent to distribute and the instruction would have been legally

11

appropriate. A lesser included offense instruction would have been legally appropriate here.

A lesser included offense instruction also must be factually appropriate. A defendant is entitled to instructions applicable to his or her defense theory if sufficient evidence exists from which a rational fact-finder could find for the defendant. An appellate court views this evidence in a light most favorable to the defendant. *Woods*, 301 Kan. at 876. However, an appellate court also gives deference to any factual findings made by the district court, and the court will not reweigh evidence or the credibility of witnesses. *Plummer*, 295 Kan. at 162.

The State relies on four unpublished Court of Appeals cases to argue that a lesser included offense instruction was not factually appropriate. These cases are distinguishable from this current case. In *State v. Bates*, No. 117,419, 2019 WL 1412600 (Kan. App. 2019) (unpublished opinion), *rev. denied* 310 Kan. ___ (December 6, 2019), and *State v. Jimenez*, No. 111,659, 2015 WL 5036738 (Kan. App. 2015) (unpublished opinion), the defendants were convicted of possessing controlled substances with the intent to distribute where the amount of the controlled substance was sufficient to trigger the statutory presumption for intent to distribute. A lesser included offense instruction was not factually appropriate because the defendants in both cases failed to present any evidence to overcome that presumption. *Bates*, 2019 WL 1412600, at *9; *Jimenez*, 2015 WL 5036738, at *3-4. Here, the weight of the marijuana was not enough to trigger the statutory presumption. In *State v. Coyan*, No. 107,510, 2013 WL 4046399, at *6-7 (Kan. App. 2013) (unpublished opinion), and *State v. Rhyne*, No. 106,313, 2012 WL 5205570, at *3-4 (Kan. App. 2012) (unpublished opinion), the district courts were affirmed because the district courts' failure to instruct the jury on a lesser included offense was not clearly erroneous, not because a lesser included offense was not factually appropriate. None of the State's cited cases support its argument.

If Richmond had made the claim that the marijuana was for his personal use, the lesser included instruction would clearly have been factually appropriate. He did not. He claimed total lack of knowledge of the marijuana.

Assuming the instruction was factually appropriate, further analysis is required before Richmond can prevail on his argument. It must be determined if it was clearly erroneous to not give the instruction.

Richmond did not object to the lack of a lesser included offense instruction for possession of marijuana, nor did he ask for one. When no objection was made, an appellate court will only reverse the district court if the failure to include the instruction was clearly erroneous. See *State v. Brooker*, 27 Kan. App. 2d 396, 402, 4 P.3d 1180 (2000). To be clearly erroneous, Richmond must "firmly convince us that '"the jury would have reached a different verdict'" had the instruction been given." *State v. Carter*, 305 Kan. 139, 163, 380 P.3d 189 (2016) (quoting *State v. Smith-Parker*, 301 Kan. 132, 164, 340 P.3d 485 [2014]).

The jury found the necessary elements for possession of marijuana were present when it convicted Richmond of possession of marijuana with the intent to distribute. The fact that the jury could have found Richmond guilty of possession instead of possession with intent to distribute does not mean that the jury would have convicted Richmond of the lesser offense. See *Williams*, 295 Kan. at 523-24 ("[J]ust because we find that a rational jury *could* have found Williams guilty of the lesser included offense does not necessarily mean that we believe that the jury *would* have convicted her of the lesser offense."). There is insufficient evidence to firmly establish that the jury would have convicted Richmond of possession instead of possession with the intent to distribute if the instruction had been given.

*Coyan*, used by the State to argue the instruction was not factually appropriate, illustrates this idea. In *Coyan*, the Court of Appeals stated there was evidence that Coyan possessed methamphetamine, the lesser included crime, but the court was firmly convinced that the jury would not have convicted Coyan of the lesser crime. Coyan never claimed the methamphetamine found in the vehicle was for his personal use and denied possessing the drugs at all. Instead he claimed the drugs belonged to another person. There was also evidence of scales and baggies found with the drugs. A KBI agent testified the amount of methamphetamine was inconsistent with personal use and suggested an intent to distribute. The court was "firmly convinced the jury would not have found Coyan guilty of simple possession rather than the more serious crime of possession with the intent to distribute had it been given that option." 2013 WL 4046399, at *7. As a result, the court held the district court's failure to give the instruction was not clear error. 2013 WL 4046399, at *7.

As in *Coyan*, Richmond never argued the marijuana was for his personal use, and he denied possessing it. Richmond claimed the marijuana belonged to Jackson. Along with the marijuana, Deputy Clement found a digital scale and plastic baggies in the vehicle. Deputy Clement testified that Richmond's trip to Colorado with a quick turnaround time, not knowing where he traveled to in Colorado, and owning multiple cell phones was indicative of drug trafficking.

When looking at the totality of the evidence, we are not "firmly convinced" that the jury would have reached a different verdict. The district court's failure to instruct the jury on the lesser included offense of possession of marijuana was not clearly erroneous.

Affirmed.